Filed 3/14/14

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re GINO C. et al., Persons Coming Under the Juvenile Court Law. | |
| | D064336 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J518615 A-B) |
| v. | |
| ERICK P. et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of San Diego County, Cynthia A. Bashant, Laura J. Birkmeyer, and David B. Oberholtzer, Judges. Reversed.

Rosemary Bishop, under appointment by the Court of Appeal, for Defendant and Appellant Erick P.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant Sabrina R.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Paula J. Roach, Deputy County Counsel for Plaintiff and Respondent.

INTRODUCTION

Father and mother appeal a judgment declaring their minor children dependents and denying placement of the children with father. Father contends the juvenile court erred in assuming permanent subject matter jurisdiction over the matter because the court did not comply with the requirements of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) (Fam. Code, § 3400 et seq.) beforehand.[1] Mother joins in this contention to the extent it inures to her benefit. Father and mother additionally contend the court failed to find by clear and convincing evidence placement of the children with father would be detrimental to the children. They also contend the court erred in determining father was a custodial parent at the time the dependency arose and, consequently, the court applied the wrong standard in determining whether to place the children with him.

We need not address the latter two contentions because respondent San Diego County Health and Human Services Agency (Agency) concedes, and we agree, the court did not properly comply with the UCCJEA before assuming permanent subject matter jurisdiction. We therefore reverse the judgment and remand the matter for further proceedings.

---

[1] Further statutory references are to the Family Code unless otherwise stated.

BACKGROUND[2]

*Detention and Petition*

Mother and the children, all of whom are United States citizens, were travelling by bus to Nevada from Mexico, where they had lived for four years. While the bus was stopped at a border patrol checkpoint in San Clemente, California, mother told a border patrol agent she and the children were in danger from the other people on the bus. When the agent went to check on the children, they were in a deep sleep and did not respond to the agent's attempts to awaken them.

Mother appeared to be mentally ill and/or under the influence of drugs. She admitted she had smoked methamphetamine earlier in the day. She was arrested and taken to jail for being under the influence of a controlled substance. The children were taken to a hospital, where they tested negative for illegal drugs. They were then taken to Polinsky Children's Center.

An Agency social worker interviewed the children. They were very active and had difficulty focusing and sitting still. They told the social worker they had been living with their parents in Mexico. They were heading to Nevada to stay with their maternal grandmother. They did not attend school and they sometimes saw their father hit their mother. One child said mother disciplined them by pulling their hair or hitting them with a belt or her open hand.

---

[2]    This case has a complex factual background. We confine our summary to the facts necessary to provide context for and resolve the UCCJEA issue.

When mother was released from jail, she stated she could not appear at the detention hearing and asked the social worker to take care of the children, as she needed to go to Nevada to be with her mother. The Agency subsequently filed a petition under Welfare and Institutions Code section 300, subdivision (b), alleging the children were at substantial risk of harm because mother was unable to provide regular care for them due to her mental illness or substance abuse.

*Detention Hearing*

Mother did not appear at the detention hearing and father's whereabouts were not then known, although the Agency believed he resided in Mexico. Minors' counsel asked the court to take temporary jurisdiction since the children had been living in Mexico for the past few years. The court (Judge Oberholtzer) indicated it could not take temporary emergency jurisdiction at that point, but it could make temporary orders, which it did. The court set a hearing to address the UCCJEA issue, with the jurisdiction and disposition hearing to trail behind.

*UCCJEA and First Jurisdiction and Disposition Hearing*

Mother appeared telephonically at the next hearing. Father's whereabouts were still unknown. Both mother's counsel and the Agency's counsel acknowledged the UCCJEA issue. When questioned by the court (Judge Bashant), mother confirmed the children were United States citizens, but had lived in Mexico the preceding four years. Mother also stated there had not been any custody proceedings involving the children anywhere else. Based on mother's statements, the court took temporary emergency

4

jurisdiction over the matter. The court then continued the jurisdiction and disposition hearing to allow the Agency to further attempt to locate father.

*Second Jurisdiction and Disposition Hearing*

Mother appeared telephonically at a second jurisdiction and disposition hearing. Father's counsel appeared, but father, who lived in Mexico and could not be reached by telephone, did not appear. Regarding the UCCJEA issue, the Agency posited that, since the court had already assumed temporary emergency jurisdiction and there was no evidence of any custody orders out of Mexico, the court had the discretion to contact a Mexican judge to discuss whether Mexico was incline to take the case. The court (Judge Oberholtzer) responded, "Well, my reading of the UCCJEA is that I remain more or less passive in this. If somebody else wants to bring a custody proceeding in what they perceive to be the home state, that's up to them." The court later clarified it would not be contacting anyone in Mexico unless requested by the Agency. The court subsequently continued the hearing once again.

*Third Jurisdiction and Disposition Hearing*

Mother appeared telephonically at a third jurisdiction and disposition hearing. Father's counsel also appeared, but father, who again could not be reached by telephone, did not appear. The court (Judge Oberholtzer) revisited the UCCJEA issue. The court determined Mexico was the children's home state. The court also determined it could take temporary emergency jurisdiction because the Agency's detention of the children was necessary to protect them from actual or threatened abuse or mistreatment. Since the court was not aware of any child custody proceeding in Mexico involving the children

5

and since neither parent had indicated an intent to initiate a child custody proceeding in Mexico, the court determined its temporary emergency jurisdiction became permanent and California became the children's home state. The court subsequently set a trial on the issue of whether the children were dependents under Welfare and Institutions Code section 300, subdivision (b).

*Settlement Conference*

Mother and father both appeared telephonically for a pretrial settlement conference. At the conference, the court (Judge Birkmeyer) again raised the UCCJEA issue. The court noted Judge Bashant had taken temporary emergency jurisdiction and clarified neither parent had asked a Mexican court to make custody orders involving the children. The court also accepted the parties' representation Judge Oberholtzer had decided "while Mexico may have been the home state of the children, in light of the fact that the parents hadn't gone to any court, they have never been to a court involving custody issues or family law issues, that it was his opinion that no further inquiry needed to be made and—that is with the Mexican authorities, and that the temporary emergency jurisdiction could go forward." The court then found that, while both children "are reported to have a home state in [Mexico], in light of the fact that the courts there have not been called upon to—to determine the custody issues with respect to these children, I do find that the temporary emergency jurisdiction will now be a permanent jurisdiction . . . ." The court also adopted the prior findings of Judge Oberholtzer regarding the UCCJEA.

6

Father contends the court erred by assuming permanent jurisdiction without first contacting Mexico or providing a time-limited order giving the parties an opportunity to file a custody action in Mexico. The Agency concedes the court erred in assuming permanent jurisdiction. We agree.

Section 3421, subdivision (a), of the UCCJEA provides "the exclusive jurisdictional basis for making a child custody determination by a court of this state." (§ 3421, subd. (b).) Under section 3421, subdivision (a), a court has jurisdiction to make an initial child custody determination only if : (1) this state is the child's "home state," meaning the state in which the child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the child custody proceeding was commenced (§§ 3421, subd. (a)(1) & 3402, subd. (g)); (2) the child's home state has declined to exercise jurisdiction (§ 3421, subd. (a)(2) & (3)); or (3) the child does not have a home state (§ 3421, subd. (a)(4)).[3] "Physical presence of, or personal jurisdiction

---

[3]    Section 3421 specifically provides: "(a) Except as otherwise provided in Section 3424, a court of this state has jurisdiction to make an initial child custody determination only if any of the following are true: [¶] (1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state. [¶] (2) A court of another state does not have jurisdiction under paragraph (1), or a court of the home state of the child has declined to exercise jurisdiction on the grounds that this state is the more appropriate forum under Section 3427 or 3428, and both of the following are true: [¶] (A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence. [¶] (B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships. [¶] (3) All

over, a party or a child is not necessary or sufficient to make a child custody determination."  (§ 3421, subd. (c).)

Here, the parties agree the children's home state is Mexico because they lived there for six consecutive months immediately preceding the filing of this case.  (§ 3402, subd. (g).)  Although the court could have contacted Mexico to address the jurisdictional issue (§ 3410, subd. (a)), the court opted not to do so and there is no other evidence Mexico declined to exercise its home state jurisdiction.  (§ 3421, subd. (a)(3).)  Accordingly, the court had no jurisdictional basis under section 3421, subdivision (a), to make a child custody determination.

Nonetheless, a court without jurisdiction under section 3421, subdivision (a), may exercise "temporary emergency jurisdiction" when a "child is present in this state and . . . it is necessary in an emergency to protect the child because the child . . . is subjected to, or threatened with, mistreatment or abuse."  (§ 3424, subd. (a).)  However, temporary emergency jurisdiction does not confer authority to make a permanent child custody determination.  (*In re C. T.* (2002) 100 Cal.App.4th at 101, 108.)  Where, as appears here, there was no existing child custody proceeding in the home state and no prior child custody determination entitled to enforcement, a child custody determination made by a court with temporary emergency jurisdiction remains in effect until an order is obtained from the home state.  (§ 3424, subd. (b).)  If no child custody proceeding is

courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 3427 or 3428.  [¶] (4) No court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3)."

8

initiated in the home state, the determination becomes final "if it so provides *and this state becomes the home state of the child.*"  (*Ibid.*, italics added.)

The court's efforts to comply with the UCCJEA fell short because the court misinterpreted section 3424, subdivision (b), as allowing the court's temporary emergency jurisdiction to automatically convert to permanent jurisdiction if the parents did not initiate child custody proceedings in Mexico.  Instead, the statute precludes a child custody determination by a court exercising temporary emergency jurisdiction from becoming final *until this state becomes the child's home state*.  (See *In re C. T.*, *supra*, 100 Cal.App.4th at p. 113 [a court may address the merits of a dependency petition after determining an emergency exists *if the court can assert jurisdiction under the non-emergency jurisdiction provisions of the UCCJEA*]; see also 91A West's U. Laws Ann. (2014) U. Child Custody Jurisdiction and Enforcement Act, com. to § 204 [an emergency custody determination made under subsection (b) may become a final custody determination *when the state that issued the determination becomes the child's home state*.)

On this record, the only apparent avenue for the court to obtain home state jurisdiction over the children is for Mexico to decline to exercise its home state jurisdiction.  (§ 3421, subd (a)(3).)  Since the court opted to remain passive and did not contact Mexico, Mexico has not been given an opportunity to decide whether to exercise its home state jurisdiction.  Therefore, the court erred in assuming permanent jurisdiction over the matter.

9

The court may have based its interpretation of section 3424, subdivision (b), on language in *In re Angel L.* (2008) 159 Cal.App.4th 1127 (*Angel L.*) stating, "Once the court detained the children and declared them dependents of the court, its temporary emergency jurisdiction ripened into permanent jurisdiction and California became their home state." (*Id.* at p. 1140.) We conclude any reliance on this statement was misplaced.

Preliminarily, we note the court in *Angel L.*, *supra*, 159 Cal.App.4th 1127, did not cite any authority for this statement nor did the court purport to be interpreting any particular provision of the UCCJEA when it made the statement. Cases are not authority for issues not addressed. (*In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388.)

In addition, any discussion in *Angel L.*, *supra*, 159 Cal.App.4th. 1127, of the UCCJEA's temporary emergency jurisdiction provisions was dicta because the custody determination at issue in *Angel L.* was made under the UCCJEA's predecessor, the Uniform Child Custody Jurisdiction Act (UCCJA). The two statutes differ significantly in their treatment of emergency jurisdiction. As we observed in *In re C. T.*, *supra*, 100 Cal.App.4th at pp. 112-113: "One of the reasons the UCCJA was revised and the [UCCJEA] enacted was to clarify when a court could take emergency jurisdiction over a child. The [UCCJEA] made clear that emergency jurisdiction could be exercised to protect a child only on a temporary basis until the court with appropriate jurisdiction issued a permanent order."

As the legislative history of the UCCJEA likewise explained, the UCCJA provided "that the grounds for taking emergency jurisdiction are on an equal footing with the other grounds for taking jurisdiction, including the 'home state' ground." Conversely, the

10

UCCJEA provides for "temporary emergency jurisdiction, that can ripen into continuing jurisdiction *only if no other state with grounds for continuing jurisdiction can be found or, if one is found, that state declines to take jurisdiction*." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 668 (1999-2000 Reg. Sess.) as introduced Apr. 6, 1999, p. 3, italics added; see also Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 668 (1999-2000 Reg. Sess.) as amended Apr. 12, 1999, p. 2; Assem. Com. on Judiciary, Analysis of Sen. Bill No. 668 (1999-2000 Reg. Sess.) as amended Apr. 12, 1999, p. 1; Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 668 (1999-2000 Reg. Sess.) as amended July 15, 1999, pp. 2-3.)

*Angel L.* is also factually distinguishable. Unlike in this case, there was evidence in *Angel L.* suggesting California may have actually been the child's home state because the child and a parent lived in California immediately preceding the filing of the dependency action. (*Angel L.*, *supra*, 159 Cal.App.4th at pp. 1132, 1134, 1137, fn. 4.) There was also evidence the court had repeated, substantial contact with the other possible home state and that state showed no interest in assuming jurisdiction over the child. (*Id.* at pp. 1133-1135, 1139.) Consequently, we conclude *Angel L.* provides no support for the proposition temporary emergency jurisdiction converts to permanent jurisdiction absent this state becoming the home state under the non-emergency provisions of the UCCJEA.

11

## DISPOSITION

The judgment is reversed. The case is remanded to the juvenile court to conduct further proceedings consistent with this opinion.

McCONNELL, P. J.

WE CONCUR:

NARES, J.

IRION, J.