Filed 4/9/21

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of SEAN WANG and JIAOJIAO ZHOU. | H046250 (Santa Clara County Super. Ct. No. 2015-6-FL-015520) |
| SEAN WANG, Respondent, v. JIAOJIAO ZHOU, Appellant. | |

In 2016, the Superior Court of Santa Clara County (the trial court) exercised its temporary jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) (Fam. Code, § 3400 et seq.[1]), and issued custody orders regarding appellant Jiaojiao Zhou's (Zhou) and respondent Sean Wang's (Wang) child, who lived primarily in China. Zhou and Wang incorporated the custody orders into their stipulated dissolution judgment in 2017, reiterating that the trial court made the orders pursuant to its emergency jurisdiction under the UCCJEA.

In 2018, a court in China issued a custody order as part of a judgment (the Chinese judgment), awarding sole custody of the child to Zhou, who registered the custody order in the trial court. Wang opposed the registration. The trial court first issued temporary emergency orders vacating service of the registration. Following a hearing, it denied registration of the Chinese judgment. Zhou contends the trial court erred by vacating the

_____

[1] Undesignated statutory references are to the Family Code.

registration because China had exclusive jurisdiction to make custody orders under the relevant provisions of the UCCJEA. Finding no error in the trial court's decision to deny registration of the Chinese judgment, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Zhou and Wang married in 2010 and separated in 2016; the trial court entered a judgment of dissolution in September 2017. Wang initiated the dissolution proceedings and the trial court acquired jurisdiction over Zhou in February 2016 when she appeared in the proceedings. The parties have one child of the marriage, a daughter, born in 2013 in China.[2] Daughter lived primarily in China with Zhou, but made frequent, extended trips to the United States to visit Wang, who worked in California. Daughter had a United States passport, although it was expired at the time it was referenced in the record.

Prior to the trial court's first hearing in the matter, each party filed requests for various orders, including a request by Zhou to "return to domicile," and a request by Wang for a domestic violence restraining order against Zhou.[3] The court held hearings on these requests in March 2016. Wang asked the trial court to take emergency jurisdiction over custody, as it did not appear that California had "regular" jurisdiction; Wang asserted the "emergency" was Zhou's desire to take Daughter back to China.[4] Zhou stated she would file an action in China "right away" if she was allowed to return to

---

[2] To protect the child's privacy, we will refer to her as "Daughter."

[3] The parties did not designate any of these requests, or any pleadings related to the requests, as part of the record on appeal. Zhou attached portions of the reporter's transcript from the trial court's hearings in March 2016 to a memorandum of points and authorities she filed in August 2018, which is part of the record. Additionally, the clerk's transcript contains a complete copy of the reporter's transcript from the March 25, 2016 hearing.

[4] From the context of the hearing, it is clear the parties were discussing the trial court's jurisdiction to issue custody orders under the UCCJEA  The provisions of the UCCJEA specify when a California court has jurisdiction to issue initial custody orders, and when a California court without such jurisdiction can make emergency orders. (§§ 3421, 3424.)

2

China.  Based on this representation, the trial court stated that any exercise of its emergency jurisdiction would not be "long term."  Wang did not dispute that Daughter lived in China in the six months prior to the case being filed, such that California would only have jurisdiction to make custody orders under section 3424.  Wang contended that under subdivision (b) of that statute, such jurisdiction could become a final determination if California became Daughter's home state.  The record on appeal does not include the minute order from the hearing, or the portion of the transcript indicating what findings or orders, if any, the court made during this first hearing.

The court held a second hearing the following day.  The parties conceded that jurisdiction over custody rested with China, unless the trial court exercised emergency jurisdiction.  The court held an off-the-record discussion with the parties about custody and visitation issues.  Thereafter the parties agreed that California would assume emergency jurisdiction, despite the fact that China was Daughter's country of habitual residence.  The parties agreed they would "either register the order from [California] or create an identical order in China so that there will be a fully enforceable order in both jurisdictions."

At the end of the hearing, the trial court indicated that it would "include in its orders the language of Family Code section 3048 that California has jurisdiction to make the custody order especially having made the finding that China is the country of habitual residence; United States had emergency jurisdiction and makes these orders within that context recognizing that China will now be the custodial jurisdiction state."  The parties reached additional agreements regarding their visitation with Daughter, which the court memorialized in a written order filed in July 2016.  The written order confirmed that the court "assumed emergency child custody jurisdiction," and ordered that a copy of the written order either be registered in China, or that an order be filed in China reflecting the same terms and conditions as set forth in the California order.  Under the terms of the order, Daughter would return to China with Zhou, and then return to California, with

Zhou, for several extended periods during the year, at which time Daughter would have regular visitation with Wang.

In August 2016, the parties entered into an agreement concerning property and support issues and agreed that the July 2016 custody order would remain in full force and effect. Thereafter the parties signed a stipulation for judgment in September 2017, agreeing that the "emergency child custody jurisdiction order filed . . . on July 21, 2016, shall remain in full force and effect until further order of a court of competent jurisdiction. . . . Based on the July 21, 2016 emergency child custody jurisdiction order, it is further acknowledged that the minor child's country of habitual residence is the People's Republic of China (China), and that this court only assumes emergency child custody jurisdiction in this matter." Neither party appealed that judgment.

In June 2018, Zhou filed the Judicial Council form to register the Chinese judgment, issued by the Beijing Xingcheng District People's Court in China in May 2018. The English translation of the Chinese judgment states that the Chinese court conducted a trial, at which Zhou and her "designated agent," and Wang and his designated agents appeared to participate in the lawsuit. The Chinese judgment indicates Zhou informed the Chinese court of the dissolution proceedings in California, referencing a "provisional hearing" in the United States regarding custody, wherein the California court issued a "temporary order." The Chinese judgment also indicates Zhou alleged to the Chinese court that she was "tricked" or "forced" by Wang into the California dissolution. Zhou asked the Chinese court to award her custody of Daughter, with Wang to have visitation in China one weekend per month.

According to the Chinese judgment, Wang denied tricking or forcing Zhou into the California dissolution. He alleged the parties entered into a voluntary settlement agreement, which they both followed after the California court entered the judgment of dissolution. While he believed it was in Daughter's best interest to be raised by him in

4

California, if the Chinese court determined Zhou was to have custody, Wang asked that Daughter be allowed to visit him in California for extended periods.

The Chinese court denied Wang's request to admit and implement the California dissolution judgment, as "the divorce case of both parties was in trial of Chinese court according to the provision Item (4), Clause I, Article 12 of *Provision of Supreme People's Court on Chinese Citizen Applying for Admitting Divorce judgment Procedure of Foreign Court*." The Chinese court determined that Zhou should have "full and sole child custody" of Daughter, with Wang to have visitation on Saturday and Sunday in the third week of every month. The Chinese judgment specifies that either party could appeal the judgment to the Beijing Second Intermediate People's Court.

Wang filed written opposition to Zhou's registration of the out-of-state custody order with the trial court and asked the trial court to order Zhou to renew Daughter's United States passport, and to return Daughter to the United States for visitation in Summer 2018. According to Wang, the Chinese judgment was not yet operative, because he had appealed the judgment, resulting in a stay of the order. Wang supported his claim with a "legal opinion" prepared by his attorneys in the Chinese action, as well as a declaration from a Chinese legal expert, all of whom opined that the Chinese judgment was not yet in effect due to Wang's appeal. Thus, he asked the trial court to vacate the registration of the Chinese judgment and order Zhou to comply with the July 2016 custody order.

Wang asked for the following temporary emergency orders pending the hearing on his requests, which the trial court granted: "1) Vacate the service of [Zhou's] registration of Out of State Custody Order, and enforce Custody Order filed on July 21, 2016[;] [¶] 2) Compel [Zhou] to renew child's U.S. passport by August 10, 2018 at U.S. Embassy in Beijing, China, using expressed [*sic*] service for delivery of new U.S. Passport book and card; child shall then return to U.S. with a valid U.S. passport and spend the rest of

5

summer as [Wang's] vacation with the child till August 31, 2018, pursuant to Custody Order filed on July 21, 2016. [Father] shall keep Passport card."

In response to Wang's requests, Zhou contended that China had jurisdiction over child custody pursuant to section 3421, as the parties agreed China was Daughter's home state. While section 3424, subdivision (a) allowed a California court to exercise emergency custody jurisdiction if the child was present in California and such an exercise was necessary to protect the child from mistreatment or abuse, no such emergency existed. Based on this assertion, Zhou obtained custody orders from the Chinese court, and registered the order with the trial court, in compliance with the trial court's orders. Thus, Zhou asked the trial court to accept the Chinese judgment and deny Wang's request for orders.

The trial court held a hearing in August 2018. Zhou argued that the trial court's custody orders were based only on the California court's emergency jurisdiction under the UCCJEA, while China remained Daughter's home state. The trial court indicated that Zhou had agreed that California would have jurisdiction over all custody and visitation issues. Wang confirmed that he received notice of the Chinese proceedings, and participated in the Chinese proceedings, with representation by counsel. He also confirmed that he was appealing the Chinese judgment, as it was impossible for him to visit Daughter once a month in China while he lived in the United States. Wang contended that Zhou failed to comply with the trial court's order to register the trial court's July 2016 order in China, or otherwise obtain an identical order in China, instead filing a brand-new case seeking sole custody of Daughter. Zhou alleged that the Chinese court would not allow Zhou to register the California order; she had to file for divorce. When the trial court questioned the appropriateness of the Chinese visitation order, Zhou argued that California did not have jurisdiction to address custody because China continued to exercise its home state jurisdiction.

6

The trial court determined that Zhou had agreed to seek an identical custody order in China if she was not able to register the July 2016 order there; she failed to do so. The court ruled that it would "deny [Zhou's] ability to register" the Chinese order in the trial court, "because I think she did violate the judgment from 2017 by getting a new order, whether it was emergency jurisdiction or not. She stipulated part of the order, that the status quo of visitation would be applicable in China moving forward and she stipulated that." The court granted Wang's request for an order compelling Zhou to renew Daughter's passport and to comply with the terms of the July 2016 order.

The trial court issued a written order on August 14, 2018, granting "Father's request to deny mother's request to register the [Chinese judgment]." Zhou filed a timely notice of appeal from the order, which is appealable as an order made after an appealable judgment. (Code Civ. Proc., § 904.1, subd. (a)(2); Cal. Rules of Court, rule 8.104(a)(1).)

## II. DISCUSSION

We commence by clarifying the issue before us. Zhou contends the trial court erred when it determined in August 2018 that it had subject matter jurisdiction over custody and visitation. However, that is not the determination the trial court made in its August 2018 order. Although Zhou frames her appeal as the review of an order regarding jurisdiction under the UCCJEA, she asks this court to review the order denying her request to register an out-of-state custody order. The trial court did not explicitly rule that it had jurisdiction under the UCCJEA. Nor did Wang argue that the trial court had superior jurisdiction over the Chinese court regarding child custody. Wang contested registration of the Chinese judgment on the grounds the judgment had been stayed by the Chinese court upon Wang's appeal of the judgment. Thus, we consider whether the trial court properly denied registration of the Chinese order.

### A. *Standard of Review*

The UCCJEA includes provisions regarding the recognition and registration of out-of-state orders. (§§ 3443, 3445) "When reviewing a jurisdictional order under the

7

UCCJEA, a court of review is not bound by the trial court's findings and may independently reweigh the jurisdictional facts. [Citations.]" (*In re Marriage of Fernandez-Abin & Sanchez* (2011) 191 Cal.App.4th 1015, 1042 (*Fernandez-Abin*).) However, with respect to purely factual findings, we defer to the trial court's assessment of credibility, whether that assessment was based on in-person testimony or written declarations. (*In re Marriage of Nurie* (2009) 176 Cal.App.4th 478, 492.) Where the case is tried based on affidavits, " ' "the rule on appeal is that those affidavits favoring the contentions of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom." [Citations.]' [Citation.]" (*Ibid.*)

### B. The Trial Court's Authority Under the UCCJEA

A brief review of the legal authority underlying the trial court's jurisdiction to make custody orders, and its authority regarding the registration of out-of-state custody orders, is helpful to understand the issues. The UCCJEA sets forth several bases on which a California court has jurisdiction to make an initial custody order. (§ 3421.) Most relevant here, the court can make custody orders if it was the home state of the child on the date the custody proceeding commenced. (§ 3421, subd. (a).) " 'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. . . . A period of temporary absence of any of the mentioned persons is part of the period." (§ 3402, subd. (g).) When the custody proceedings commenced in 2016, the parties conceded the facts on which the trial court determined that California did not have jurisdiction to make initial custody orders; Daughter had resided in China for at least six months prior to commencement of the proceedings.

The trial court issued custody orders in March 2016 based on its temporary emergency jurisdiction under section 3424, which affords a California court custody jurisdiction "if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of

8

the child, is subjected to, or threatened with, mistreatment or abuse." (§ 3424, subd. (a).)

"If there is no previous child custody determination that is entitled to be enforced under this part and a child custody proceeding has not been commenced in a court of a state having jurisdiction under Sections 3421 to 3423, inclusive, a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under Sections 3421 to 3423, inclusive. If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under Sections 3421 to 3423, inclusive, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child." (§ 3424, subd. (b).) None of the orders issued by the trial court in this matter provide that they would become a final determination if a custody proceeding was not commenced in China and California became Daughter's home state.[5]

Section 3443 requires California courts to recognize and enforce custody determinations issued by other states, "if the latter court exercised jurisdiction in substantial conformity with [the UCCJEA] or the determination was made under factual circumstances meeting the jurisdictional standards of [the UCCJEA] and the

---

[5] Based on the facts presented by the parties, in March 2016 the trial court determined its jurisdiction to issue custody orders rested only in section 3424. Neither party appealed this determination, which is incorporated into the September 2017 judgment. On appeal, Wang now contends Daughter's absence from the United States in the six months prior to the commencement of the proceedings was a "temporary absence" under section 3402, subdivision (g). Any contention that California was Daughter's home state at the commencement of the proceedings, such that the trial court had jurisdiction to make initial custody orders under section 3421, rather than emergency orders under section 3424, could have and should have been raised in an appeal from the September 2017 judgment. When the trial court issues an appealable order in an action, and no appeal is taken, the order becomes binding in the same case as to the issues addressed in the order. (*In re Matthew C.* (1993) 6 Cal.4th 386, 393, superseded by statute on other grounds as stated in *People v. Mena* (2012) 54 Cal.4th 146, 156; *In re Marriage of Gruen* (2011) 191 Cal.App.4th 627, 638; *Lennane v. Franchise Tax Bd.* (1996) 51 Cal.App.4th 1180, 1185-1186.) Because they were not raised in a timely appeal, we will not consider Wang's contentions now.

determination has not been modified in accordance with [the UCCJEA]. (§ 3443, subd. (a).) The provisions of section 3441 et seq. also apply to custody orders issued by foreign countries "under factual circumstances in substantial conformity with the jurisdictional standards of [the UCCJEA]." (§ 3405, subd. (b).) However, a California court does not have to apply the UCCJEA "if the child custody law of a foreign country violates fundamental principles of human rights." (§ 3405, subd. (c).)

### C. The Trial Court Properly Denied Registration of the Chinese Order

Section 3445 sets forth the procedure for registering an out-of-state custody order. There is no dispute Zhou complied with subdivision (a) of section 3445; she submitted the proper Judicial Council form entitled "registration of out of state custody order," asking the trial court to register the Chinese judgment, along with copies of the judgment and the names of both parents. Subdivision (b) of section 3445 then required the trial court to file the Chinese judgment and serve notice on Wang, providing him the opportunity to contest the registration. If a parent contests registration, the trial court must hold a hearing, at which it "shall confirm the registered order unless the person contesting registration establishes any of the following: [¶] (1) That the issuing court did not have jurisdiction under Chapter 2 (commencing with Section 3421). [¶] (2) That the child custody determination sought to be registered has been vacated, stayed, or modified by a court having jurisdiction to do so under Chapter 2 (commencing with Section 3421). [¶] (3) That the person contesting registration was entitled to notice, but notice was not given in accordance with the standards of Section 3408, in the proceedings before the court that issued the order for which registration is sought."[6]

---

[6] Wang did not contend to the trial court that the Chinese court lacked jurisdiction to issue custody orders under section 3421. Nor did he allege that he did not receive notice of the Chinese proceedings; at the hearing in August 2018, Wang confirmed to the trial court that he knew about and participated in the Chinese action. In opposing Zhou's appeal, Wang now alleges the Chinese judgment was not in substantial conformity with the UCCJEA, an argument he did not make to the trial court. As that issue would require consideration of controverted facts not addressed to the trial court, we will not consider

10

It is well established that if the trial court's order is correct on any legal theory, we will affirm it, even if the trial court's reasoning was wrong. (*Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329-330; *Young v. California Fish & Game Comm'n* (2018) 24 Cal.App.5th 1178, 1192-1193.) Here, Zhou argues that the trial court erred because it determined it had subject matter jurisdiction over custody and visitation of Daughter. The trial court stated it denied Zhou's request to register the Chinese judgment on the theory that Zhou had violated the September 2017 judgment in which she had stipulated to obtaining identical custody orders in Chinese. However, we conclude the trial court properly denied Zhou's request to register the Chinese order because Wang established that the Chinese judgment was stayed pending his appeal. (§ 3445, subd. (b)(2).)

First, there is evidence in the record supporting a finding that the Chinese order was stayed. Wang submitted the written analysis of the attorneys representing him in the Chinese proceedings, and a declaration from an attorney in China, indicating that Wang's appeal resulted in a stay of the Chinese judgment. Zhou did not dispute that the order was stayed pending Wang's appeal. In the memorandum of points and authorities she filed in opposition to Wang's requests, she indicated that Wang had not provided a finding or order indicating that he had appealed the Chinese judgment. However, Zhou indicated in correspondence to Wang that she was not following the Chinese judgment because of the pending appeal. Moreover, the attorney declaration Wang filed in support of his motion indicates the attorney reviewed and verified the filing receipt for Wang's appeal. Zhou did not object to the trial court considering any of the evidence submitted by Wang.

There also is evidence supporting a finding that the Chinese court had jurisdiction to stay the Chinese judgment under section 3421 et seq. Daughter had lived with Zhou in China for at least six consecutive months prior to the commencement of the proceedings

---

the argument on appeal. (See *14859 Moorpark Homeowner's Ass'n v. VRT Corp.* (1998) 63 Cal.App.4th 1396, 1403, fn. 1.)

11

in 2016, such that China was her home state under sections 3402, subdivision (g), and 3421, subdivision (a)(1). While California issued custody orders under its temporary emergency jurisdiction pursuant to section 3424, subdivision (a), under those provisions of the UCCJEA codified in California's family law statutes, China retained continuing, exclusive jurisdiction to issue and modify custody orders. Under the UCCJEA, a state that has jurisdiction to make initial custody orders under section 3421 retains exclusive jurisdiction until either: "(1) A court of [the] state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with [the] state and that substantial evidence is no longer available in [the] state concerning the child's care, protection, training, and personal relationships[; or] [¶] (2) A court of [the] state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in [the] state." (§ 3422, subd. (a).) The record shows that Daughter and Zhou remained in China at the time the Chinese court issued its judgment, rendering these provisions inapplicable. Unless China declined to exercise its jurisdiction (see § 3421, subd. (a)(3)), China had jurisdiction over custody under the UCCJEA, and thus had authority to stay its custody orders pending Wang's appeal.

Because Wang established that the Chinese court, as a court with jurisdiction under section 3421, et seq., stayed the Chinese judgment, the trial court properly denied registration of that judgment. (§ 3445, subd. (b)(2).) Pursuant to section 3424, subdivision (b), the custody orders issued by the trial court thus remained in effect until a valid order was obtained from the home state, which the evidence here shows was China. (See *In re Gino C.* (2014) 224 Cal.App.4th 959, 966; *Fernandez-Abin*, *supra*, 191 Cal.App.4th at p. 1041.) The August 2018 order, in addition to denying registration of the Chinese judgment, served to enforce the trial court's prior orders until the litigation in China was resolved and the case was no longer stayed on appeal. In the absence of a

12

valid order from the Chinese court (i.e., an order that had not been stayed), such enforcement was appropriate.

### III.    DISPOSITION

The August 14, 2018 order is affirmed.

_____
Greenwood, P.J.

WE CONCUR:


_____
Grover, J.


_____
Danner, J.


Wang v. Zhou
No. H046250

|  |  |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No.: 2015 6 FL 015520 |
| Trial Judge: | The Honorable Stuart J. Scott |
| Attorney for Appellant,<br>JiaoJiao Jhou: | Stuart Fishman<br>The Law Offices of Stuart Fishman, LLP |
| Sean Wang: | Sean Wang, in pro. per. |

Wang v. Zhou
H046250